Kenneth Lee HOLLENBECK,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 81–1141.

United States Court of Appeals,
Fifth Circuit.

April 5, 1982.

Rehearing and Rehearing En Banc
Denied May 21, 1982.

Albert S. Low, Jr., Houston, Tex., for petitioner-appellant.

Joe Foy, Jr., Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before COLEMAN, POLITZ and GARWOOD, Circuit Judges.

POLITZ, Circuit Judge:

Convicted of murder with malice in Texas state court,[1] Kenneth Lee Hollenbeck seeks federal habeas corpus relief under 28 U.S.C. § 2254, contending that he was denied the

---

1. Hollenbeck's conviction was affirmed on direct state appeal; state habeas relief was de- nied.

right to testify and his trial was marred by ineffective assistance of counsel. The district court denied relief. We affirm.

### Context Facts

On the night of February 28, 1973, Hollenbeck inauspiciously engaged in an extended drinking bout in a Dallas bar with a former employee, Joe Hernandez. The two men left the bar in Hollenbeck's new car, with Hollenbeck driving. Hollenbeck had refused Hernandez permission to drive because of Hernandez's condition; he had been drinking for several hours before Hollenbeck joined him at the bar.[2]

In response to Hernandez's inquiry, Hollenbeck revealed that there was a fifth of scotch in the glove compartment. Hernandez consumed approximately half of the bottle without pausing. He then took Hollenbeck's .357 magnum single-action revolver from the glove compartment and began waving it around. Hernandez cocked the pistol, pointed it at Hollenbeck and demanded that he be allowed to drive.

Hollenbeck stopped the vehicle, exited and walked around its rear. Hernandez slid over to the driver's side and placed the pistol on the console between the seats. After opening the passenger door, Hollenbeck picked up the pistol, pointed it at Hernandez and said, "Is this what you want or is this it?" Hernandez reached for Hollenbeck's hand. Hollenbeck fired, emptying the six-shot revolver. Five of the bullets struck and killed Hernandez. The sixth was found in the interior of the auto.

At the beginning of the murder trial, out of the presence of the jury, the judge told Hollenbeck that he had a right to testify on his own behalf or he could decline to do so. Hollenbeck chose not to testify, a decision concurred in by his retained counsel. Hollenbeck claims that during the course of the trial, he told his attorney he had changed his mind and wanted to testify. His counsel was opposed. Hollenbeck made no further effort to testify; he relied on his attorney's advice. Hollenbeck did not inform the trial judge that he desired to testify.

Hollenbeck maintains on appeal that he was improperly denied his right to testify, and that his counsel was ineffective, principally for failing to introduce evidence of self-defense.

### The Right to Testify

The right to testify has been recognized. "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971). *See Faretta v. California*, 422 U.S. 806, 834 n.45, 95 S.Ct. 2525, 2540 n.45, 45 L.Ed.2d 562 (1975); *Wright v. Estelle*, 572 F.2d 1071, 1074 (5th Cir. 1978) (en banc) (Godbold, J., dissenting).

The state trial judge informed Hollenbeck of his right to testify, in a model of appropriate judicial concern for the constitutional rights of a criminal defendant. The explication by Judge Thomas B. Thorpe is worthy of reproduction in full:

THE COURT: All right. Mr. Hollenbeck would you and your attorney come forward here, please, for just a minute?

Realizing that you have two very competent attorneys, there's not much reason for me to take this up with you, but out of an abundance of caution, I want to advise you that the law provides that you have a right to testify and no one can keep you from testifying if you want to. Do you understand that?

THE DEFENDANT: I do, Your Honor.

THE COURT: Now, likewise, if you choose to testify, the State of Texas will be allowed to cross-examine you just the same as any other witness and, of course, you understand that, do you?

THE DEFENDANT: Yes, sir.

THE COURT: Also, if you have previous convictions in the nature of a felony or misdemeanor involving moral turpitude that is not remote, then the State will be entitled to ask you about those convictions and, in effect, disclose those

---

2. The autopsy disclosed that Hernandez's blood alcohol content was .33%.

convictions to the jury. I'm sure you understand that.

THE DEFENDANT: Yes, sir.

THE COURT: And, likewise, you also have a right to remain silent. In other words, you do not have to testify if you don't want to, and if you choose to remain silent, the State of Texas can't make you testify. They can't call you as a witness or in any way force you to bear witness against yourself, nor can they do anything to call upon you to account for your failure to testify. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: In the event that you choose to testify and you have previous convictions that are made known to the jury, I will instruct the jury that they are not to consider those convictions for any purpose except as they may bear on your credibility and in the setting of punishment, if they got to that phase of the case.

Now, if you choose not to testify, I will instruct the jury that they can't use that against you in any way and that they can't speculate as to why you did not testify or what you might have said had you chosen to testify.

Now, do you have any questions concerning that phase of the case, your right to testify or remain silent?

THE DEFENDANT: No, Your Honor.

THE COURT: All right. Fine. Take your seat.

There can be no serious suggestion, in light of this exchange, that Hollenbeck was unaware of his right to testify or to remain silent. Nor can it be gainsaid, based on the facts reflected in the state court record and in the record of the federal habeas proceeding, that Hollenbeck knowingly and intelligently waived the right to testify. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ Hollenbeck maintains he did not attempt to testify, or to bring his change of heart to the trial judge's attention, because he had confidence in his attorney who had advised against his taking the stand. We

decline to hold that Hollenbeck was denied his right to testify. Post-conviction displeasure with his attorney's advice does not change the basic constitutional determination. Hollenbeck had been informed specifically by the trial judge that he had a right to testify and that no one could prevent the exercise of that right. Hollenbeck understood. That defense counsel may have erred in restraining Hollenbeck's testimony might implicate Hollenbeck's right to effective assistance of counsel, but it does not implicate his right to testify. We perceive no constitutional infraction as to the latter.

### *Effective Assistance of Counsel*

Hollenbeck challenges his counsel's effectiveness not only because he failed to put him on the stand, but because he failed to introduce any evidence upon which a jury instruction on self-defense could have been based.

■ The yardstick for measuring this sixth amendment right is whether counsel is reasonably likely to render and in fact rendering reasonably effective assistance. *See Kemp v. Leggett*, 635 F.2d 453, 454 (5th Cir. 1981) (*citing Jones v. Estelle*, 622 F.2d 124 (5th Cir. 1980)).

Hollenbeck argues that had he testified, he would have told the jury about threats Hernandez had made against him, and of the struggle for the gun prior to its discharge. He further urges that had his wife testified, she could have corroborated the threats. He insists that his blood-stained clothes should have been introduced, because evidence adduced at trial showed that the gun was at least 2½ to 3 feet away from Hernandez when fired. Hollenbeck maintains the two were closer and his blood-splattered clothes would have supported that claim.

Counsel's decision not to put Hollenbeck on the stand is defensible. The evidence established that Hollenbeck fired six shots from his single-action revolver; five bullets were found in Hernandez. At the federal habeas hearing, defense counsel spoke of his concern about how Hollenbeck would ex-

plain "the cocking of the gun and then pulling the trigger again and again and again ..." It was not unreasonable for counsel to conclude that Hollenbeck might do himself more harm than good by attempting to explain how six shots were fired in self-defense. Similarly, counsel explained his decision against calling Hollenbeck's wife as a witness by noting that her testimony would have corroborated the testimony of the prosecution's key witness. Introduction of the clothing required the testimony of the wife to complete the chain of custody, so the decision was made against offering this evidence.

■ We are not prepared to say that these trial decisions by Hollenbeck's counsel rendered his assistance constitutionally inadequate. The "complaints come within the amorphous zone known as 'trial strategy' or 'judgment calls.' ... We decline to evaluate the propriety of trial counsel's actions with the aid of the refractive correction of hindsight." *Jones v. Estelle*, 632 F.2d 490, 492 (5th Cir. 1980), *cert. denied*, 451 U.S. 916, 101 S.Ct. 1992, 68 L.Ed.2d 307 (1981). The representation meets the standard of being reasonably effective.

The judgment of the district court is AFFIRMED.