UNITED STATES of America, Appellee,

v.

SYSTEMS ARCHITECTS, INC.,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Karen Y. PAN, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

George S. PAN, Defendant, Appellant.

Nos. 84–1561, 84–1564 and 84–1565.

United States Court of Appeals,
First Circuit.

Argued Dec. 5, 1984.

Decided Feb. 22, 1985.

As Amended on Denial of
Rehearing May 20, 1985.

**374**

Robert L. Sheketoff, Boston, Mass., with whom Elizabeth A. Lunt and Zalkind & Sheketoff, Boston, Mass., were on brief for defendants, appellants.

Jay A. Brozost, Washington, D.C., with whom Morris B. Silverstein, Criminal Div., U.S. Dept. of Justice, Washington, D.C., and William F. Weld, U.S. Atty., Boston, Mass., were on brief for appellee.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Defendants Systems Architects Inc. (SAI), George S. Pan and Karen Y. Pan have brought this appeal of their convictions on various counts arising from an indictment charging that appellants engaged in a scheme to defraud the appellee United States (Government) by mischarging the labor hours that SAI employees worked on government contracts.[1] The mischarging was allegedly accomplished through the alteration of employees' time sheets, the charging of work done on one project to other projects, the deliberate misposting of employees' hours in the corporate accounting ledgers, and the giving of specific orders by the appellants to subordinate employees to record hours other than those the employees actually worked.

Of the original 55 counts in the indictment, 38 counts were dismissed upon motion by the Government. After the Government presented its case in the bench trial, the judge dismissed six more counts. At the conclusion of closing arguments, the judge found appellant George S. Pan guilty of ten of the remaining counts and acquitted him on one count. Karen Pan, who was charged on only five counts, was found guilty on two and acquitted on three. SAI was convicted on all eleven counts.

■ Appellants claim that the trial court violated their constitutional rights and Rule 23 of the Federal Rules of Criminal Procedure when it allegedly failed to obtain a proper and sufficient waiver of their right to a jury trial. We find this allegation lacking in merit.

---

**1.** SAI and Karen Pan were convicted of making false statements in violation of 18 U.S.C. § 1001. George Pan was convicted on counts of mail fraud, false statements and false claims, in violation of 18 U.S.C. §§ 1341, 287 and 2.

Appellants do not claim that their waivers were not made intelligently, knowingly, and voluntarily. They take issue only with the fact that the written waiver and the colloquy on this matter did not contain specific references to voluntariness or knowledge. After a brief dialogue the day before trial, the waivers of all the appellants were approved by the judge.[2] Rule 23(a) requires that the right of jury trial be waived explicitly in writing; no reference is made to oral inquiries. *United States v. Anderson*, 704 F.2d 117, 119 (3rd Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 129, 78 L.Ed.2d 125 (1983). The colloquy between the judge and the defendant serves both to emphasize the seriousness of the decision to waive the right to trial by jury and to create a clear record of the circumstances of the waiver, establishing that "express and intelligent consent was indeed given." *Anderson, supra*, at 119, quoting *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1935). However, those cases cited by appellants to support their contention, cases in which absence of a sufficient colloquy was cause for reversal, can be distinguished from the case at bar, *e.g.* a defendant with a substantial psychiatric history whose competency to knowingly waive his right was in doubt;[3] a supervisory rule adopted by one circuit requiring an adequate oral inquiry.[4]

In the present case, the record is devoid of any evidence or indication that the waiver was coerced or that appellants were incompetent to make a knowing and intelligent waiver. To the contrary, the defendants were a corporation dealing in sophisticated, state-of-the-art computer systems, and its well-educated owner and managers. We, therefore, find that the signed waivers and the colloquies prior to the district court's approval fulfilled the requisites for a valid waiver of jury trial.

Appellants take the same position on the court's failure to inquire into their waivers of the right to testify on their own behalf. They do not allege that they wanted to testify or that they did not know that they could do so. They simply maintain that the court had an affirmative duty to determine that their decision to remain silent was intelligent and voluntary. Once again, appellants are misguided.

■ 18 U.S.C. § 3481 does provide for testimony by the accused: "... the person charged shall, *at his own request*, be a competent witness." (Emphasis supplied). The accused must act affirmatively. While the due process clause of the Fifth Amendment may be understood to grant the accused the right to testify, the "if" and "when" of whether the accused will testify is primarily a matter of trial strategy to be decided between the defendant and his attorney. *See Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972); *Hollenbuck v. Estelle*, 672 F.2d 451 (5th Cir.), *cert. denied*, 459 U.S. 1019, 103 S.Ct. 383, 74 L.Ed.2d 514 (1982).

■ The instant case is not a situation where the defendants wanted to testify and were prevented from doing so by the trial court or counsel. *Cf. Poe v. United States*, 233 F.Supp. 173 (D.D.C.1964), *aff'd* 352 F.2d 639 (D.C.Cir.1965); *see also Alicea v. Gagnon*, 675 F.2d 913 (7th Cir.1982). Nor does the record contain anything which

2. SAI asserts that its written waiver was not filed until the third day of trial. This is highly inaccurate, to say the least. Mr. Thomas Dwyer, Jr. was authorized by all the directors and stockholders of SAI to represent said corporation in the case at bar, pursuant to a resolution dated November 14, 1983. At the time of the waiver in court, Appellant George Pan, the sole stockholder, was present and took part in the discussion. Mr. Dwyer indicated that he had the authority from the current SAI president to waive the jury.

The judge accepted the waiver conditionally, pending the filing of an affidavit of formal authorization from that officer, who at that moment was out of town. The trial court informed Mr. Dwyer that: "If there is some problem with it [the affidavit], we will start over again and call a jury." Appellants did not bring any such problem to the attention of the court.

3. *United States v. David*, 511 F.2d 355 (D.C.Cir. 1975).

4. *United States v. Delgado*, 635 F.2d 889 (7th Cir.1981).

would alert the court to a disagreement between attorney and client regarding whether they should take the stand. We are convinced that under the circumstances of the case at bar, there was no error committed in the trial court's failure to interrogate the appellants on this point. There is no constitutional or statutory mandate that a trial court inquire further into a defendant's decision to not testify under the facts here. *United States v. Janoe,* 720 F.2d 1156, 1161 (10th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984).

█ Appellants further contend that their Fifth and Sixth Amendment rights were violated by the trial court's alleged failure to deliberate before pronouncing its verdict. They claim that there was no deliberation because the court did not recess following closing arguments. In our view, this conclusion is brought about by a misconception regarding the nature of the deliberative process in non-jury trials.

In a jury trial, the jury is usually given early in the trial, some form of the following admonishment:

> FIRST, do not discuss the case either among yourselves or with anyone else during the course of the trial. In fairness to the parties to this lawsuit, you should keep an open mind throughout the trial, reaching your conclusion only after all the evidence is in and you have heard the attorney's summations and my *instructions to you on the law, and then only after an interchange of views with the other members of the jury.*

(Emphasis supplied). I Devitt and Blackmar, *Federal Jury Practice and Instructions,* Chap. 10, § 10.14. This is because the verdict in a jury trial is the product of all the jurors. Their deliberation may not begin until the judge charges them, because their evaluation of the evidence must be tempered by those instructions and reflect the law governing the action.

This is obviously not the same situation in a trial without a jury. The trial judge has, from the beginning, access to and appreciation of the law applicable to the case. He has judicial training and expertise which members of the jury lack. His decision is an individual one, not that of a group. Appellants do not cite, nor do we find, any cases which prohibit the trial judge from deliberating during the course of the hearings. In this action the judge found in favor of the defendants on six counts at the close of the government's case. There were no allegations by the appellants that the court did not deliberate at this point. For that matter, judges are called upon throughout trials to weigh evidence and deliberate.

The cases cited by appellants in support of their position deal with situations in which the trial court failed to allow closing arguments or made statements to the effect that the decision would not be influenced by them.[5] We do not find these cases applicable to the instant action.

Appellants do not offer any evidence to support a contention that the judge failed to deliberate during the trial and through the closing arguments. To the contrary, the judgment in the case reflects a weighing of each count individually: SAI was convicted of all the remaining charges, Counts 1–11. George Pan was acquitted on Count 6, and convicted on all other counts. Karen Pan was acquitted on the first three counts and convicted on Counts 4 and 5.

These results clearly militate against appellant's contention that the judge did not "deliberate" before reaching his verdicts.[6] It is, therefore, rejected.

We must next consider whether the district court improperly admitted witness Frank Toohey's opinion regarding the amount of direct labor costs which were improperly shifted to overhead accounts. Toohey, a senior Defense Contract Audit Agency (DCAA) auditor, testified for the government both as a summary witness and as an expert. Toohey's credentials and the court's finding of his capacity to testify as an expert witness were not challenged by the defendants. Rule 702 of the Federal Rules of Evidence specifically provides the following:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to

---

5. *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *Spense v. State,* 463 A.2d 808 (Md.1983); *United States v. King,* 650 F.2d 534 (4th Cir.1981).

6. To "deliberate" means to weigh, to ponder, to consider, to reflect upon. *People v. Thomas,* 156 P.2d 7 (Cal.1945).

determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

Rule 704 provides:

Testimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

In this instance, appellants are objecting to Toohey's figures on the mischarges and the manner in which he calculated the probable amount of overbilling. The witness detailed to the court the method he employed in reaching these figures. He carefully explained what SAI labor charging records he examined and how he evaluated them. He testified as to how he verified the time-sheet alterations and incorrect ledger postings and that only 75% of the 540 instances in which direct labor costs were shifted to non-labor charges could be verified.

■ It is well settled that the propriety of receiving expert testimony rests with the sound discretion of the trial court. *United States v. Hensel*, 699 F.2d 18, 38 (1st Cir.), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983); *United States v. Fosher*, 590 F.2d 381 (1st Cir. 1979).

■ A review of the record shows that Toohey was completely candid about the method he used in making his calculations. It was clear that he could not, from SAI's records, verify a portion of the figures he used in those calculations, but, given the overwhelming confirmation of his observations by the other witnesses,[7] we can safely conclude that the trial court did not abuse its discretion by admitting his testimony.

■ The final contention with which we must deal is appellant's allegation that the trial court erred in denying their motions for judgments of acquittal. In reviewing such a motion, the court must consider the evidence as a whole taken in the light most favorable to the Government, together with all legitimate inferences drawn therefrom to determine whether a rational trier of fact could have found guilt beyond a reasonable doubt. *United States v. Smith*, 680 F.2d 255, 259 (1st Cir.1982), *cert. denied*, 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983); *United States v. Patterson*, 644 F.2d 890, 893 (1st Cir.1981). *See also United States v. Quejada-Zurique*, 708 F.2d 857, 859 (1st Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 173, 78 L.Ed.2d 156 (1983).

Mr. Toohey testified that in the last months of 1979, he told both George and Karen Pan about the numerous problems he had discovered involving SAI labor accounting practices. Other witnesses who worked for the company testified that in 1980, they were still being directed by the Pans to make alterations and misbookings of the same type cited by Toohey.

In addition to the Pans' coordination of the mischarging, there was testimony to the effect that the appellants were directly involved in the preparation of the overhead submissions made to the government which contained rates that were inflated through the mischarges. The Pans would discuss these submissions with other employees prior to filing them. An additional witness testified that she was instructed by George Pan to alter materials before turning them over to a DCAA auditor. George Pan also directed the SAI General Manager to withhold documents subpoenaed by the grand jury which would implicate Karen Pan, according to other testimony. Still another witness testified that Karen Pan told her not to provide any information concerning the labor journals to an independent accountant hired to audit SAI's books.

■ The Government, in proving its case, need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt. *United States v. Smith, supra*, at 259; *United States v. Gabriner*, 571 F.2d 48, 50 (1st Cir.1978). Based upon our review of the record, as indicated above, we conclude that there is more than adequate evidence to support the conclusions reached by the district court.

---

7. The government called twenty-six other witnesses, most of whom were employees or former employees of SAI. Many of them testified as to how they were ordered to alter their own time sheets or those of other employees. Accounting department employees testified that they were directed by the appellants to charge employee's hours to other accounts or to overhead.

Appellants' challenge to venue in the District of Massachusetts for Count Three is without merit. The Supreme Court has recognized that venue is a personal privilege which may be waived. *Singer v. United States*, 380 U.S. 24, 35, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). The importance of proper venue has been acknowledged, but it has, nevertheless, been considered to be waived where the indictment or statements by prosecution clearly reveal this defect but defendant fails to object. *See United States v. Price*, 447 F.2d 23, 27 (2d Cir.), *cert. denied*, 404 U.S. 912, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971). In the case at bar, the appellants first raised the issue of venue at the close of the government's case. The trial court found that the issue was waived on the grounds that appellants had not objected to venue prior to trial, even though they were aware of the alleged venue defect since the filing of the indictment.[8] We agree.

*Affirmed.*

**8.** George Pan personally delivered the claim to Mr. Luna at the Small Business Administration in Washington, D.C. Pan, therefore knew, when reading the indictment that referred to this act, that it had taken place outside of Massachusetts.