*United States v. Blanco*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of June, two thousand twenty.

PRESENT:
> BARRINGTON D. PARKER,
> SUSAN L. CARNEY,
> > *Circuit Judges*,
> LEWIS A. KAPLAN,
> > *District Judge.*\*

———————————————————————

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                 No. 19-1680

VIRGINIA BLANCO,

> *Defendant-Appellant,*

GIOVANNY MARTE, also known as Gio,
ROWY VAZQUEZ, also known as Trouble,
ANDRES CRUZ, also known as Fifth, JEFFREY
MARTINEZ, also known as Sealed Defendant 1,

———————————————

\* Judge Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

*Defendants.*
_____

FOR DEFENDANT-APPELLANT:    STEPHEN R. LEWIS, Stephens, Baroni,
                            Reilly & Lewis, LLP, White Plains, NY.

FOR APPELLEE:               JAMIE BAGLIEBTER (Sam Adelsberg and
                            Anna M. Skotko, *on the brief*), Assistant
                            United States Attorneys, *for* Geoffrey S.
                            Berman, United States Attorney for the
                            Southern District of New York, New
                            York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Seibel, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on May 31, 2019, is **AFFIRMED**.

Virginia Blanco appeals from a judgment of conviction entered following a jury trial in the United States District Court for the Southern District of New York (Seibel, *J.*). Blanco was convicted of one count of conspiracy to commit bank robbery in violation of 18 U.S.C. § 371 ("Count One"); one count of bank robbery in violation of 18 U.S.C. § 2113(a) ("Count Two"); and one count of using and discharging a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) ("Count Three"). The court sentenced Blanco to one day of imprisonment on each of Counts One and Two, to run concurrently, and imposed the statutory minimum of ten years on Count Three, to run consecutively; five years of supervised release; and restitution in the amount of $303,500. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

1. <u>Post-Trial Motions</u>

Blanco first challenges the district court's denial of her motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, and for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.

Rule 29 permits a trial court to set aside a jury's guilty verdict and enter an acquittal if it determines the evidence was "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). We review *de novo* a district court's denial of a Rule 29 motion. *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015).

We see no error in the district court's denial of Blanco's Rule 29 motion.[1] Blanco urged that her conviction on Count Three, discharging a firearm in furtherance of a crime of violence, was not supported by the evidence, on the theory that the jury determined that she committed a crime of violence under 18 U.S.C. § 924(c)(3)(B). Section 924(c)(3)(B) was determined to be unconstitutionally vague in *United States v. Davis*, 139 S. Ct. 2319 (2019), and therefore cannot serve as a predicate to the crime charged in Count Three.

But this argument misses the point: We held in *United States v. Hendricks* that bank robbery in violation of 18 U.S.C. § 2113(a) is categorically a crime of violence. 921 F.3d 320, 327-28 (2d Cir. 2019). Blanco's bank robbery conviction under § 2113 thus supplies the "crime of violence" element. *Hendricks* renders the jury's finding on § 924(c)(3)(B) both irrelevant and unnecessary. Blanco's sufficiency claim thus fails.[2]

Rule 33, in turn, provides that a trial court may vacate a judgment of conviction and order a new trial if "justice so requires." Fed. R. Crim. P. 33(a). We review the denial of a

---

[1] The district court found that Blanco's post-trial motions were untimely, and made no finding of excusable neglect. App'x 322-24. We take no position on the timeliness issue, as we affirm that court on the merits.

[2] Blanco also clarified at oral argument that, in her view, Count Three must be vacated because she may have been convicted on a theory of *Pinkerton*, or co-conspirator, liability. *See Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946). We are not persuaded. Even if the jury found Blanco liable for bank robbery based on *Pinkerton*, as opposed to under an aiding-and-abetting theory of liability, that would not somehow transform her conviction for *substantive* bank robbery into one for bank robbery *conspiracy*, implicating the residual-clause concerns explored in *Davis* and this Court's subsequent decision in *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019).

3

Rule 33 motion for abuse of discretion, assessing the factual findings in support of such a decision for clear error. *United States v. Rigas*, 583 F.3d 108, 125 (2d Cir. 2009).

The district court was well within its discretion in rejecting Blanco's Rule 33 motion. The motion highlighted numerous aspects of her trial counsel's performance that she maintained rendered him ineffective as a matter of law. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-pronged test for ineffective assistance of counsel. We have described that test as imposing a "heavy burden" on a defendant, *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004), for to prevail in overturning a conviction on this ground it a defendant must show: (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense," *Strickland*, 466 U.S. at 687. Both prongs must be satisfied in order for a court to conclude that the conviction "resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* Largely for the reasons stated by the district court in its analysis, Blanco has failed to carry that heavy burden.

*First*, Blanco points to certain discovery materials that she became aware of only after trial, and that trial counsel knew of but did not review with her. She characterizes them as exculpatory. As an initial matter, we are not aware of any authority requiring defense counsel to review with his client all of the discovery materials that counsel acquires in the course of preparing for trial. More important, however, Blanco does not demonstrate how the allegedly exculpatory material—which consisted primarily of a few statements, made by individuals without firsthand knowledge of the planning of the robbery, that plans to rob the bank had been underway *before* she began working there—would have altered her defense, proven her innocence, or otherwise changed the outcome of the trial. Thus, even if we assume that trial counsel committed unprofessional errors by failing to share this material with Blanco, Blanco fails at the second *Strickland* prong because she cannot demonstrate prejudice.

*Second*, Blanco takes issue with her trial counsel's decision not to contact, interview, or call as witnesses certain individuals who may have been able to provide testimony to rebut the government's theory that an insider helped plan the robbery, and to cast doubt on the

4

credibility and character of the government's witnesses. We have been clear that "[t]he decision not to call particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam). Even "strategic choices made after less than complete investigation" may be reasonable provided "that reasonable professional judgments support the limitations on investigation." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005).[3] Thus, we "will not normally fault counsel for foregoing [sic] a potentially fruitful course of conduct if that choice also entails a significant potential downside." *Id.* We have serious doubts, however, as to whether trial counsel's failure in this case to interview or even contact potential witnesses falls within the bounds of reasonable professional judgment. We nevertheless conclude that Blanco has not shown that the outcome of the trial would have been different had trial counsel contacted and interviewed the witnesses she identifies: Two of those witnesses could only have offered impeachment evidence as to collateral matters. *See, e.g.*, *United States v. Vargas*, 920 F.2d 167, 170 (2d Cir. 1990) (declining to find counsel ineffective for calling defense witnesses whose proffered testimony related only to collateral matters). The others could only have acted as character witnesses, proffering testimony as to Blanco's good reputation and work ethic. Moreover, Blanco's trial counsel was able to elicit "[f]avorable testimony concerning Miss Blanco's behavior . . . through a government witness," App'x 186, which avoided the risk of opening the door for the government to attack Blanco's character. We therefore see no abuse of discretion in the district court's determination.

*Third*, Blanco criticizes trial counsel's cross-examination of the government's two cooperating witnesses, arguing that counsel passed up valuable opportunities to impeach each one. We afford "significant deference . . . [to] a trial counsel's decision how to conduct cross examination," and "refus[e] to use perfect hindsight to criticize unsuccessful trial strategies." *Eze v. Senkowski*, 321 F.3d 110, 132 (2d Cir. 2003). For that reason, we have stated that "[d]ecisions about whether to engage in cross-examination, and if so to what

---

[3] Unless otherwise noted, this Order omits all alterations, citations, and internal quotation marks in text quoted from case law.

extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002). Blanco highlights claimed inconsistencies in those witnesses' testimony, but the information she urges her counsel should have sought to elicit does not obviously contradict their statements and, in some cases, may have corroborated certain other aspects of the government's case. Although she stands on firmer ground in her criticism that her counsel's "ham-handed" questioning in one instance (to quote the district court), App'x 345, bolstered the government's position that an insider was involved with the robbery, the witness did not suggest (or know, prior to trial) that the insider was Blanco. We thus think the district court acted well within its discretion in finding this basis did not support her ineffective assistance claim.

*Fourth*, Blanco identifies three purported shortcomings in trial counsel's opening statement. He: (1) offered a "theory of justification" as to why Blanco's then-boyfriend, Giovanny Marte, an active co-conspirator in the robbery, "'gave her up [to the authorities],' not why he lied"; (2) "lowered the bar of proof in the eyes of the jury telling them that all the government had as proof were details as to what 'normal boyfriend girlfriends do'"; and (3) failed to address Blanco's lies in her pre-arrest interview with the FBI. Appellant's Br. 35-36. Only the first of these grounds has any semblance of merit. Addressing the last contention first, explaining that Blanco may have lied to the FBI because she felt scared or under pressure would have committed Blanco to testifying as much. It certainly was not unreasonable for trial counsel to opt not to do so. Indeed, we have long acknowledged that it often will be preferable for counsel not to commit to a particular position, leaving himself "free to develop any defense that might materialize as the prosecution presented its case." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). Turning to the boyfriend/girlfriend commentary, Blanco seems to have misunderstood what her trial counsel actually said. Far from referencing the government's burden of proof, he attempted to minimize what it *could* prove, suggesting there may be evidence of a romantic relationship but that fell short of a crime. Finally, there can be little question that trial counsel misspoke in stating that Blanco's then-boyfriend "gave her up." Appellant's Br. 36. Taken in context,

6

he plainly meant that her then-boyfriend would have no qualms about *falsely* implicating Blanco. In the face of the evidence adduced by the government, however, it cannot credibly be argued that the omission of this one sentence from the opening would have resulted in an acquittal. In sum, Blanco does not prevail on any ground of her ineffective assistance counsel claim.

## 2. Jury Instruction

Next, Blanco takes the position that the district court's jury charge was erroneous for the same reasons as she set forth in her Rule 29 motion: It asked the jury to make a factual finding as to whether Count One (robbery conspiracy) or Count Two (robbery) (or both) were crimes of violence. Because Blanco failed to object to this charge in the district court, we review for plain error. *United States v. Marcus*, 560 U.S. 258, 262 (2010). For the reasons described above, we find no such error here. That the jury made an *extraneous* finding can be of little doubt. But, for reasons we have described above, there can be equally little doubt that, in doing so, the error did not affect "the outcome of the district court proceedings," or "the fairness, integrity or public reputation of judicial proceedings." *Id.* Accordingly, this claim fails.

## 3. Evidentiary Rulings

Finally, Blanco asserts that the district court erred by admitting certain evidence relating to her knowledge of Marte's use of firearms (the "Gun Evidence"), and her occasional assistance with his narcotics dealing (the "Firearm Evidence"). The district court based its determination on its conclusion that the Gun Evidence constituted "other act" evidence under Rule 404(b) of the Federal Rules of Evidence and that the Drug Evidence was relevant under Rule 401. We review a trial court's evidentiary rulings "deferentially," and "will reverse only for abuse of discretion." *United States v. Quinones*, 511 F.3d 289, 307 (2d Cir. 2007). Further, even when we determine that a district court's evidentiary ruling was erroneous, we will not order a new trial "if we can conclude with fair assurance that the jury's judgment was not substantially swayed by the error." *United States v. Paulino*, 445 F.3d 211, 219 (2d Cir. 2006).

7

Evidence of uncharged criminal activity is admissible as relevant under Rule 401 of the Federal Rules of Evidence if it "tend[s] to prove the government's case." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997). Rule 401 evidence thus includes evidence that "directly establishes an element of the crime," but its sweep is not so narrowly confined. *Id.* Evidence may also be relevant if it "provide[s] background for the events alleged in the indictment." *Id.* Such "[b]ackground evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *Id.*

Alternatively, evidence of uncharged criminal activity may be admissible under Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But it may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To be admissible under this rule, however, evidence of such "other crimes, wrongs, or acts" must (1) be advanced for a proper purpose; (2) be "relevant to a material issue in dispute"; and (3) have probative value that is not substantially outweighed by any unfair prejudicial effect. *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012). In addition, if so requested, the court must provide an appropriate limiting instruction. *See United States v. Brand*, 467 F.3d 179, 196 (2d Cir. 2006). Our Circuit evaluates Rule 404(b) evidence under an "inclusionary approach," and will allow its admission for any proper purpose other than to show a defendant's criminal propensity. *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002). Nevertheless, our approach "does not obviate the need to identify the fact or issue to which the evidence is relevant." *United States v. Figueroa*, 618 F.2d 934, 939 n.2 (2d Cir. 1980). In other words, we must be able to identify a clear connection between the prior act evidence and an issue that is disputed at trial.

Of course, a trial court may in any event reject the admission of any relevant evidence that does not satisfy Rule 403 of the Federal Rules of Evidence. Rule 403 permits the exclusion of such evidence "if its probative value is substantially outweighed by a danger

of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

As an initial matter, we see no error in the district court's admission of the Drug Evidence under Rule 401 because it "gave coherence to the basic sequence of events" underlying the charged criminal conduct. *Gonzalez*, 110 F.3d at 942. That Blanco and Marte were not just living together or dating, but that he trusted her to assist in a criminal drug scheme, could help the jury understand why Blanco—who had no criminal history herself— was trusted by Marte, who was the robbery conspiracy's leader, to play a key role in planning a risky and dangerous bank robbery.[4] Because the district court allowed the admission of only limited testimony under the Drug Evidence rubric, and, further, gave a limiting instruction, we identify no abuse of discretion in the court's Rule 403 balancing.

We also agree with the district court's Rule 404(b) determination as to the Gun Evidence. That evidence was being advanced for a proper purpose: showing that Blanco— who was (in the district court's words) a "seemingly legitimate person," App'x 135—was aware of and willing to assist in criminal misconduct. In other words, the evidence was admissible to help the jury understand how a criminal relationship between Blanco and Marte developed, and to highlight for the jury their relationship of mutual trust (a relationship that played an important role in the case). *See, e.g.*, *United States v. Mercado*, 573 F.3d 138, 140-41 (2d Cir. 2009) (holding district court did not err in admitting evidence of prior firearm sales because "prior dealings between two conspirators show the basis for the trust between the co-conspirators" and allow jury to distinguish between "innocent acts of a friend" and "knowing participation in a conspiracy"). Further, the evidence was unquestionably relevant to the crimes with which Blanco had been charged (most obviously Count Three, the firearms count). And as for the Rule 403 balancing, the district court correctly observed that testimony describing Blanco transporting a gun at the behest of

---

[4] For substantially the same reasons, we observe that, even had the Drug Evidence been subject to Rule 404(b), the court correctly admitted it because it tended to "show[] the development of the relationship Defendant and [Marte], providing background for the events alleged in the indictment and enabling the jury to understand the complete story of the crimes charged, or how the illegal relationship between coconspirators developed." *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009).

Marte, learning from him how to use the gun, and having access to his gun in the apartment they shared was "no more inflammatory than the charged crimes." *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999). Indeed, arguably, it was less inflammatory; and at the same time, it was highly probative. App'x 137. In addition, as with the Drug Evidence, the court gave a limiting instruction, helping to maintain the Rule 403(b) balance.

In any event, of those evidentiary rulings pointed by Blanco, any—if error at all— were harmless error, because "there is sufficient corroborating evidence to support the conviction" even without the Drug Evidence and the Gun Evidence. *United States v. Colombo*, 909 F.2d 711, 714 (2d Cir. 1990). Thus, even assuming that the district court erred, a new trial (the relief Blanco seeks) is not warranted on this record.

\* \* \*

We have considered Blanco's remaining arguments and conclude that they are without merit. To the extent that she seeks to raise issues for the first time on appeal or in her reply brief, we decline to review them and deem them waived. *See, e.g.*, *United States v. Pereira*, 465 F.3d 515, 520 n.5 (2d Cir. 2006). For the reasons set forth above, the district court's judgment is **AFFIRMED**.[5]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[5] We note that, before she was sentenced Blanco filed a pro se motion seeking relief pursuant to 28 U.S.C. § 2255. The district court correctly denied that motion as premature, and ordered the motion terminated. The court did not adjudicate the motion on its merits, as Blanco's sentencing had not yet occurred. Should Blanco file a § 2255 motion after these proceedings have concluded, such a motion would not be a "second or successive motion" for purposes of 28 U.S.C. § 2255(h).